646 S.E.2d 349 (2007)
In the Matter of A.R.G.
No. 378A06.
Supreme Court of North Carolina.
June 28, 2007.
Anthony Hal Morris and Janis E. Gallagher, Greenville, for petitioner-appellee Pitt County Department of Social Services.
Annick Lenoir-Peek, San Antonio, TX, for respondent-appellant father.
BRADY, Justice.
Respondent-father appeals from a decision of the Court of Appeals dismissing his appeal as interlocutory and not based upon a "final order" in a juvenile action. Because we hold that respondent-father's appeal is not properly before this Court, we affirm the decision of the Court of Appeals. We also exercise our constitutional supervisory powers to determine whether the trial court has subject matter jurisdiction over this action even though the Pitt County Department of Social Services failed to provide certain information about the minor child when it filed the initial petition. We hold that it does.

BACKGROUND
A.R.G., a minor, was born in April 1998. The Pitt County Department of Social Services (DSS) first became involved with A.R.G. after receiving an allegation on 21 May 1998 that respondent-father Bruce G. and A.R.G.'s mother Brandy B. were engaged in a domestic violence incident while one of them was holding the child. From 21 May 1998 until 5 February 2003, DSS received six allegations concerning the mother's care of A.R.G., which included claims of domestic violence, improper care and inadequate supervision of the child, and substance abuse in the residence where the child was residing. Only one of these six allegations was unsubstantiated.
In April 2003, DSS filed a petition in Pitt County District Court alleging that A.R.G. was a neglected and dependent juvenile as defined by N.C.G.S. § 7B-101. However, DSS failed to provide the juvenile's address in its initial petition in compliance with N.C.G.S. § 7B-402, and also failed to submit an affidavit complying with N.C.G.S. § 50A-209. The trial court conducted an adjudication hearing on 31 July 2003 and on 10 September 2003 entered an order finding that A.R.G. was a neglected and dependent juvenile and awarding legal custody of the child to DSS, thereby giving DSS full responsibility for A.R.G.'s placement and care. Subsequently, the trial court entered review orders on 26 November 2003, on or about 26 January 2004, and on 28 June 2004, under which legal custody and placement authority over A.R.G. remained with DSS. On 14 September 2004, the trial court once more entered a review order under which legal custody and placement authority over A.R.G. remained with DSS. However, under this order DSS was no longer required to seek A.R.G.'s reunification with his mother but was permitted instead to pursue A.R.G.'s permanent placement with another family. On 2 November 2004, A.R.G.'s mother died in a single-vehicle accident.
Although represented by counsel at previous hearings, respondent-father did not make his first personal appearance in the matter until after the death of A.R.G.'s mother. On 25 May 2005, the trial court entered its most recent review order, under which it concluded that DSS should pursue termination of respondent-father's parental rights and adoption of A.R.G. by his foster parents. The trial court's order was based upon its finding of fact that placement with respondent-father "is unlikely" and that "it is in the best interests of" the child for DSS to pursue termination of respondent-father's parental rights. On 6 June 2005, respondent-father gave notice of appeal to the Court of Appeals from the 25 May 2005 order.
A divided panel of the Court of Appeals dismissed respondent-father's appeal on 20 June 2006. The Court of Appeals majority held that the matter was not appealable since the 25 May 2005 order of the trial court did not constitute a "final order" under N.C.G.S. § 7B-1001 and was therefore interlocutory. The dissent set forth two reasons why dismissal of the appeal was improper and a decision should have been rendered on the merits: First, a determination was necessary as to whether the trial court lacked subject matter jurisdiction over this case, due to *351 DSS's failures to provide A.R.G.'s address in the initial petition or to submit the required section 50A-209 affidavit until after the matter was no longer under the district court's jurisdiction; and, second, the 25 May 2005 order of the trial court did constitute a "final order" under N.C.G.S. § 7B-1001(4) (2003) and was thus appealable.
On 24 July 2006, respondent-father gave notice of appeal to this Court based on the dissent at the Court of Appeals.

ANALYSIS
We first address respondent-father's argument that the 25 May 2005 order of the trial court is not interlocutory because it constitutes a "final order" consistent with former N.C.G.S. § 7B-1001(4), and is therefore properly before this Court on appeal. The version of N.C.G.S. § 7B-1001 in effect when the initial petition was filed provided a right of appeal of a juvenile matter to the Court of Appeals from any "final order" of a trial court and enumerated four types of orders which constituted a "final order." See N.C.G.S. § 7B-1001 (2003).[1] Among these was "[a]ny order modifying custodial rights." Id. § 7B-1001(4).
Respondent-father argues that the 25 May 2005 order of the trial court modifies his custodial rights over A.R.G. because the trial court, in an order entered on 14 September 2004, previously found that it was not in the best interests of A.R.G. for DSS to pursue termination of parental rights at that time. Moreover, respondent-father states that there were never any orders entered before 25 May 2005 which affected his parental rights in any way, even as DSS sought reunification of A.R.G. with his mother for several months. Thus, respondent-father asserts that on 25 May 2005 the trial court effectively "changed the permanent plan from not addressing" his parental rights to "cutting him and his family off as a possibility for placement."
This Court has consistently stated that when a statute is clear and unambiguous, we will give effect to its plain meaning and will not entertain a contextual determination of legislative intent. See State v. Bryant, 361 N.C. 100, 102, 637 S.E.2d 532, 534 (2006) (citing, inter alia, Diaz v. Div. of Soc. Servs., 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006)). As the applicable statute stated, appeal could have been taken from "[a]ny order modifying custodial rights." N.C.G.S. § 7B-1001(4). The meaning of "custodial" in this statute is clear and unambiguous, as is the meaning of "modifying." Black's Law Dictionary, for instance, defines both "custody" and "legal custody" as "[t]he care, control, and maintenance of a child awarded by a court to a responsible adult" or awarded "to the state for placing the child in foster care if no responsible relative or family friend is willing and able to care for the child." Black's Law Dictionary 412 (8th ed.2004). It further defines "modification" as "[a] change to something; an alteration." Id. at 1025.
Taken together, then, an order "modifying custodial rights" plainly and unambiguously means an order which effects a change in the responsibility for the care, control, and maintenance of a child by virtue of lawful process. However, in the 10 September 2003 order of adjudication and in every review order since then, the trial court has ordered that the "legal custody" of A.R.G. should remain with DSS, and that DSS was responsible for his placement and care. Moreover, throughout the history of this case, respondent-father has never been awarded any right to legal or physical custody of A.R.G. and thus there has been no "modification" of respondent-father's rights in regard to A.R.G.
Additionally, it is instructive that DSS was merely ordered to pursue termination of respondent-father's parental rights in regard to A.R.G., but the record does not reflect that DSS has filed a petition to terminate those rights. Nor has the trial court entered an order terminating respondent-father's parental rights in regard to A.R.G. pursuant to Article 11 of the Juvenile Code. See N.C.G.S. §§ 7B-1100 to -1112 (2005). Clearly then, respondent-father's appeal is interlocutory, *352 since the 25 May 2005 order does not constitute a "final order" which "modif[ies] custodial rights" within the plain meaning of N.C.G.S. § 7B-1001(4).
An interlocutory appeal may be taken when a judicial order "affects a substantial right claimed in any action or proceeding." N.C.G.S. § 1-277(a) (2005).[2] This Court has stated that the substantial right test is rooted in the particular facts of a case and the procedural context in which the trial court's order was made. Waters v. Qualified Pers., Inc., 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978). Respondent-father offers no argument that the 25 May 2005 order has affected a substantial right, and we decline to construct one for him. See Viar v. N.C. Dep't of Transp., 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (per curiam). Thus, the Court of Appeals did not err in holding that the instant appeal is subject to dismissal.
Respondent-father contends that the trial court lacked subject matter jurisdiction in that the petition filed by DSS in April 2003 was not in compliance with N.C.G.S. §§ 7B-402 and 50A-209. Ordinarily, dismissal of an appeal would preclude any further consideration of a trial court's decision. See, e.g., Waters, 294 N.C. at 209-10, 240 S.E.2d at 344. However, we are cognizant that a court which lacks subject matter jurisdiction over a dispute is absolutely without power to render a decision upon it, and that there may be questions in the district courts and in our intermediate appellate court as to which provisions of Article 4 of the Juvenile Code are jurisdictional in nature. See In re T.R.P., 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006) ("Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act." (citing Hart v. Thomasville Motors, Inc., 244 N.C. 84, 90, 92 S.E.2d 673, 678 (1956)). Thus, under the specific facts of this case, we find it necessary to exercise the Court's constitutional supervisory power to address respondent-father's challenge to the trial court's subject matter jurisdiction. See N.C. Const. art. IV, § 12, cl. 1; see also Waters, 294 N.C. at 209, 240 S.E.2d at 344 (citing N.C. Consumers Power, Inc. v. Duke Power Co., 285 N.C. 434, 206 S.E.2d 178 (1974)).
A juvenile abuse, neglect, or dependency action is a creature of statute and "is commenced by the filing of a petition," which constitutes the initial pleading in such actions. See N.C.G.S. §§ 7B-401, -405 (2005). The version of N.C.G.S. § 7B-402 in effect when the initial petition was filed provided: "The petition shall contain the name, date of birth, address of the juvenile, the name and last known address of the juvenile's parent, guardian, or custodian and shall allege the facts which invoke jurisdiction over the juvenile." Id. § 7B-402 (2003).[3] Respondent-father's contention is that since DSS failed to include the juvenile's address when it filed the initial petition, the trial court never acquired subject matter jurisdiction over the action.
This Court recently addressed a related issue in In re T.R.P., when the question presented was whether DSS's failure to verify a petition upon filing it with the clerk of superior court, as required by N.C.G.S. § 7B-403(a), prevented the trial court from acquiring subject matter jurisdiction over the juvenile action. 360 N.C. at 588, 636 S.E.2d at 789. The Court answered in the affirmative, stating that verification "is a vital link in the chain of proceedings carefully designed to protect children at risk on one hand while avoiding undue interference with family rights on the other." Id. at 591, 636 S.E.2d at 791. Importantly, however, the Court contrasted the verification requirement with the "routine clerical information that must be included in a petition pursuant to N.C.G.S. § 7B-402." Id. at 591, 636 S.E.2d at 790-91.
*353 As we are presented in this case with the failure of DSS to include "routine clerical information," we hold that the absence of the juvenile's address on the petition did not prevent the trial court from exercising subject matter jurisdiction over this juvenile action.
The following facts are evident from a reading of the petition: A.R.G. was residing with his mother in Greenville, North Carolina; he had resided in North Carolina throughout his life, except for a short period of time he spent in Myrtle Beach, South Carolina, before 9 December 1999; and, Pitt County DSS maintained an ongoing involvement in the matter from 21 May 1998, the date DSS first received a substantiated allegation regarding the mother's care of A.R.G., until April 2003, when DSS filed the petition with the trial court. Moreover, the petition reflected significant neglect of the child while he was in the custody of his mother. From this information, the trial court could easily determine whether it had subject matter jurisdiction over the juvenile action.
Finally, respondent-father argues that the failure of DSS to supply "information as required by [N.C.G.S.] § 50A-209," either within the petition or attached to the petition, also prevented the trial court from exercising subject matter jurisdiction over the action. Specifically, respondent-father points to the information listed in N.C.G.S. § 50A-209(a): "[T]he child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period."[4] Again, we disagree. Nothing in the statute suggests that the information required is jurisdictional. To the contrary, much of the language therein leads to the opposite conclusion. First, this information is required only "if reasonably ascertainable." See N.C.G.S. § 50A-209(a) (2005). Second, if this information is not furnished at the outset, "the court . . . may stay the proceeding until the information is furnished." See id. § 50A-209(b). Finally, the pertinent statute requires both parties to submit the information. See id. § 50A-209(a). It would defy reason to suggest that a parent could defeat the jurisdiction of a trial court by his or her own noncompliance with the statute.
To hold that either of the deficiencies in the petition filed by DSS could have prevented the trial court from acquiring subject matter jurisdiction over the juvenile action would be to elevate form over substance. Such a holding would additionally impose jurisdictional limitations which the General Assembly clearly never intended when it sought to balance the interests of children with the rights of parents in juvenile actions. See id. § 7B-100(3) (2005) (stating a policy to "respect both the right to family autonomy and the juveniles' needs for safety, continuity, and permanence").
Accordingly, we modify and affirm the opinion of the Court of Appeals, which dismissed respondent-father's appeal.
MODIFIED AND AFFIRMED.
NOTES
[1] Section 7B-1001 was subsequently amended in 2005. See Act of Aug. 23, 2005, ch. 398, sec. 10, 2005 N.C. Sess. Laws 1455, 1459-60.
[2] An interlocutory appeal may also be taken pursuant to N.C.G.S. § 1A-1, Rule 54(b) when multiple claims for relief or multiple parties are involved. Rule 54(b) is not applicable in this case, as the trial court has not entered a final judgment as to respondent-father or certified that there is no just reason to delay an appeal from the order in question.
[3] Section 402 was subsequently amended in 2005. See Act of Aug. 16, 2005, ch. 320, sec. 3, 2005 N.C. Sess. Laws 1151, 1152-53.
[4] The current provision of N.C.G.S. § 7B-402(b), which references N.C.G.S. § 50A-209, was absent from the version of N.C.G.S. § 7B-402 which governs the instant case. Nevertheless, N.C.G.S. § 50A-209 on its face applies to DSS's petition since "a child-custody proceeding" was and is defined to include a juvenile abuse, neglect, or dependency action. See N.C.G.S. § 50A-102(4) (2003); N.C.G.S. § 50A-102(4) (2005).