IN THE MATTER OF: M.G., M.B., K.R., J.R.

No. COA07-643

(Filed 18 December 2007)

**1. Child Abuse and Neglect— home state—insufficient residence in North Carolina**

The trial court incorrectly found that North Carolina was the home state of children who were the subject of an abuse and neglect petition where neither child had lived in North Carolina for at least 6 consecutive months immediately before commencement of proceedings. The record contains insufficient evidence to determine whether jurisdiction exists on another basis.

**2. Child Abuse and Neglect— addresses of children—affidavit not accurate—subject matter jurisdiction—not divested**

The trial court was not deprived of subject matter jurisdiction in a child neglect and abuse proceeding by an affidavit which inaccurately reported that the children had lived with respondents continuously since 2002.

**3. Child Abuse and Neglect— petition—service on children— not required**

There is no authority requiring the service of a neglect and abuse petition on the children who were the subject of the petition, and the failure to serve them cannot be held to be a basis for concluding that the trial court lacked subject matter jurisdiction.

**4. Child Abuse and Neglect— subject matter jurisdiction— service on parents**

In an abuse and neglect proceeding involving a blended family, allocation of the names of the children among summonses

IN RE M.G., M.B., K.R., J.R.

[187 N.C. App. 536 (2007)]

based on the biological parentage of the particular child was sufficient to vest subject matter jurisdiction. This was not a termination of parental rights proceeding; the controlling statute is N.C.G.S. § 7B-406(a), with which DSS complied.

**5. Child Abuse and Neglect— amended petition—added allegations—improper**

The trial court erred by allowing DSS to amend a neglect and abuse petition to add allegations regarding the sexual abuse of one of several children. The added allegations changed the nature of the conditions relied on in the original petition.

**6. Appeal and Error— assignments of error—not supported by argument—abandoned**

Respondent mother's assignment of error to findings is deemed abandoned where she provided no argument as to why these findings were not supported by the evidence.

**7. Child Abuse and Neglect— focus on children rather than parent—evidence sufficient**

In an abuse, neglect, and dependency proceeding, the question is whether the children were abused and not whether respondent mother committed the offense. The mother here witnessed alcohol incidents and allowed the father to drive the children after drinking, which was sufficient to support a determination that respondent mother allowed to be created a substantial risk of physical injury to the juveniles by other than accidental means.

**8. Child Abuse and Neglect— serious risk of injury to children—evidence sufficient—statements about illegal conduct—not moral turpitude**

Findings of domestic violence, alcohol abuse, and driving children while intoxicated, supported by the evidence, were sufficient support for a determination that respondent father created a substantial risk of serious physical injury to the children. Statements about underage drinking, smoking, and marijuana involves conduct which is illegal, but does not fall within the traditional definition of moral turpitude.

**9. Child Abuse and Neglect— indecent liberties—conduct sufficient without intent**

The trial court correctly concluded that a child had been sexually abused by groping. The father argues that there was no evi-

IN RE M.G., M.B., K.R., J.R.

[187 N.C. App. 536 (2007)]

dence of sexual gratification, but conduct is sufficient to establish the violation.

Appeal by respondents from order entered 8 March 2007 by Judge Edward A. Pone in Cumberland County District Court. Heard in the Court of Appeals 13 November 2007.

*Elizabeth Kennedy-Gurnee for petitioner-appellee.*

*Lisa Skinner Lefler for respondent-appellant mother.*

*Annick Lenoir-Peek for respondent-appellant father.*

*Beth A. Hall for guardian ad litem.*

GEER, Judge.

Respondent mother is the biological mother of M.G. ("Martin") and M.B. ("Michelle"). Respondent father is the biological father of K.R. ("Kristen") and J.R. ("Jack").[1] Both respondents appeal from the trial court's order adjudicating all four children abused and neglected.[2] We hold that the trial court properly concluded that the four children were abused as defined by N.C. Gen. Stat. § 7B-101(1)(b) (2005) and neglected as defined by N.C. Gen. Stat. § 7B-101(15). We further affirm the trial court's determination that Kristen was sexually abused under N.C. Gen. Stat. § 7B-101(1)(d). Because, however, the trial court improperly allowed petitioner to amend its petition to add allegations of sexual misconduct as to Michelle, we must reverse the portion of the order concluding that Michelle was sexually abused. Moreover, we remand for further findings of fact regarding the trial court's jurisdiction with respect to Kristen and Jack.

Facts

On 18 May 2006, the Cumberland County Department of Social Services ("DSS") filed a juvenile petition alleging that Martin, Michelle, Kristen, and Jack were dependent, neglected, and abused children. At the time of the petition, Martin was five years old, Michelle was nine, Kristen was 13, and Jack was 14. That same day, an order for non-secure custody was entered, and the children were placed in the custody of DSS.

---

1. The pseudonyms Martin, Michelle, Kristen, and Jack are used throughout the opinion to protect the children's privacy and for ease of reading.

2. The biological father of Martin and Michelle and the biological mother of Kristen and Jack were also respondents to the trial proceedings, but are not parties to this appeal.

**IN RE M.G., M.B., K.R., J.R.**

[187 N.C. App. 536 (2007)]

On 5 December 2006, DSS filed a motion for leave to amend the petition to add allegations, based on recent disclosures by Michelle, that she had been sexually abused by respondent father. A hearing was held on the motion on 4 January 2007, and the court granted the motion on 21 February 2007.

On 19 and 20 February 2007, a hearing was held on the juvenile petition. The evidence presented at the hearing indicated the following. Initially, Kristen and Jack had lived with respondent father, but moved to California to live with their biological mother and her husband. When their mother divorced their stepfather, Jack went to live with the stepfather, but Kristen continued to live with their mother. Jack subsequently moved back to North Carolina to live with his father in December 2005 or January 2006. After Jack and Kristen's mother attempted suicide twice, Kristen also returned to live with her father in February 2006. During Kristen's first night in North Carolina, respondent father allowed Kristen and Jack to drink beer.

Respondent father was living with respondent mother and her two children, Martin and Michelle. While all four children were living with respondents, respondent father often drank alcohol, especially beer, to excess. Although sometimes he was playful, other times, he would yell at respondent mother and the children and chase them. Frequently, Jack would stand up to respondent father on behalf of respondent mother and Kristen. The children became afraid of respondent father when he was drunk—which the trial court found occurred on a regular and consistent basis.

Respondent father committed acts of domestic violence on respondent mother in the presence of the children. On one occasion, respondent father demanded that respondent mother accompany him to the bedroom. Kristen heard respondent mother yelling for respondent father to get off of her, and when respondent mother came out of the bedroom, her lip was "busted" and her arms, legs, and neck were bruised. Respondent mother told Kristen that respondent father had punched and hit her. On another occasion, respondent father hit Jack in the chest with his fist, leaving a bruise.

In addition, respondent father inappropriately slapped Kristen on the buttocks and called her "bitch" and "Big Titty McGee." On one occasion, while drunk, respondent father grabbed Kristen from behind and fondled her breasts, while another time, he inappropriately touched her in the vaginal area. Not only did respondent

IN RE M.G., M.B., K.R., J.R.

[187 N.C. App. 536 (2007)]

mother not intervene, she also called Kristen a "bitch" and frequently yelled at her.

Respondent father walked in on Kristen in the bathroom at least three times when she was taking a shower. Once, while Kristen was taking a shower, Jack and respondent father decided to play a trick on her. Respondent father lit a firecracker and threw it into the bathroom and closed the door.

On at least one occasion, respondent father drove with all four children after he had consumed a large quantity of alcoholic beverages. Respondent mother allowed respondent father to take the children, although she stayed behind. Respondent father drove to a relative's house where he drank more beer. Respondent father said that he had heard that Jack was smoking, pulled out a cigarette, and demanded that Jack smoke the cigarette. Jack refused. Respondent father also began yelling at Kristen and threatened to hit her in the face. He insisted that the children get in the truck to leave. Although they did not want to ride with respondent father, they obeyed. After stopping at a friend's house, respondent father argued with and yelled at the children as he drove them home.

On other occasions, respondent father gave beer to Kristen and Jack and offered them marijuana. Jack drank beer at respondent father's insistence. Both children watched respondent father roll marijuana cigarettes.

Respondent father also engaged in sexual activities with Michelle starting when she was eight or nine years old. On one occasion, he placed his penis in her mouth. When "stuff came out" into her mouth, she almost threw up. Another time, respondent father placed his penis in Michelle's vaginal area, but when Michelle began to cry because it hurt, respondent father said, "let's quit." Although Michelle was afraid to tell anyone, she eventually confided in a family friend and to social workers.

The trial court found that respondent mother observed many of the incidents in which respondent father consumed alcohol to excess and "act[ed] out upon her and the children." According to the trial court, despite respondent mother's knowledge of respondent father's violent and abusive nature and of his alcohol abuse, she failed to protect the minor children. When DSS called respondent father as a witness regarding the petition's allegations, he invoked the Fifth Amendment and declined to testify.

**IN RE M.G., M.B., K.R., J.R.**

[187 N.C. App. 536 (2007)]

On 8 March 2007, the trial court concluded that Michelle and Kristen had been sexually abused as defined by N.C. Gen. Stat. § 7B-101(1)(d). It further concluded that all four children were abused and neglected as defined in N.C. Gen. Stat. § 7B-101(1)(b) and -101(15), but dismissed the allegations of dependency. Finally, the court concluded that Kristen and Jack were abused as defined in N.C. Gen. Stat. § 7B-101(1)(f). After making 36 dispositional findings of fact, the trial court determined that return of the children to respondents would be contrary to their best interests and that custody should remain with DSS. The court further ordered that respondent father have "absolutely no contact with any of the minor children in this matter." Both respondents appealed from the trial court's order.

I

**[1]** Respondent father contends that the court lacked subject matter jurisdiction with respect to Kristen and Jack because North Carolina did not qualify as Kristen's and Jack's home state under the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA"). Under the UCCJEA, a child custody proceeding includes a proceeding for neglect, abuse, dependency, and termination of parental rights. *See* N.C. Gen. Stat. § 50A-102(4) (2005). Initial jurisdiction in a child custody proceeding lies in a North Carolina court only if:

(1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:

    a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

    b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under G.S. 50A-207 or G.S. 50A-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

N.C. Gen. Stat. § 50A-201(a) (2005). The "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen. Stat. § 50A-102(7).

North Carolina courts may also exercise temporary emergency jurisdiction if it is "necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." N.C. Gen. Stat. § 50A-204(a) (2005). Further, "[i]f a child-custody proceeding has not been or is not commenced in a court of a state having jurisdiction under G.S. 50A-201 through G.S. 50A-203, a child-custody determination made under this section becomes a final determination if it so provides, and this State becomes the home state of the child." N.C. Gen. Stat. § 50A-204(b).

In this case, the trial court found as to jurisdiction:

The juveniles are less than 18 years of age, are physically present in this State and District and were so at the time the petition was filed, and this State is the home state of the juveniles and was so at the time of the commencement of these proceedings.

Neither respondent challenges the court's jurisdiction under the UCCJEA with respect to Martin and Michelle. Respondent father, however, contends that the trial court erred in finding that North Carolina is the "home state" of Kristen and Jack. We agree.

DSS filed the juvenile petition on 18 May 2006. Kristen came to live with her father in February 2006, and Jack moved to North Carolina only one or two months before Kristen. Thus, at the time the petition was filed, Kristen had been living in North Carolina for three months and Jack for four or five months. Since neither child had lived in North Carolina "for at least six consecutive months immediately before the commencement of" the proceedings, the trial

**IN RE M.G., M.B., K.R., J.R.**

[187 N.C. App. 536 (2007)]

court incorrectly found North Carolina to be their home state. N.C. Gen. Stat. § 50A-102(7).

When "the trial court's sole basis for exercising subject matter jurisdiction is erroneous, we may review the record to determine if subject matter jurisdiction exists in [the] case." *Foley v. Foley*, 156 N.C. App. 409, 412, 576 S.E.2d 383, 385 (2003). While N.C. Gen. Stat. § 50A-201(a) provides three other bases under which a North Carolina court could have jurisdiction, the record does not contain sufficient evidence from which we can determine whether jurisdiction in fact exists. Although the information could have been obtained from respondent father and perhaps from the two children, who were teenagers, no attempt was made to inquire whether there were any prior child custody proceedings.

DSS and the guardian ad litem seem to argue that the lack of evidence in the record is sufficient to support jurisdiction. They cite no authority in support of this contention. Indeed, under these circumstances, controlling precedent dictates that we vacate the decision below as to Kristen and Jack and remand for a determination of subject matter jurisdiction. *See In re J.B.*, 164 N.C. App. 394, 397-98, 595 S.E.2d 794, 796-97 (2004) (vacating and remanding permanency planning order when trial court's findings of fact did not support conclusion of jurisdiction and record lacked evidence to make the determination); *Foley*, 156 N.C. App. at 413, 576 S.E.2d at 386 (vacating custody order and remanding for determination of subject matter jurisdiction when basis for assertion of jurisdiction was in error and record lacked sufficient evidence for this Court to determine subject matter jurisdiction existed). *See also Brewington v. Serraio*, 77 N.C. App. 726, 729, 336 S.E.2d 444, 447 (1985) ("North Carolina has adhered to the view that a trial court in assuming jurisdiction of custody matters must make specific findings of fact supporting its action.").

II

[2] Respondent mother raises additional arguments regarding the trial court's subject matter jurisdiction as to Kristen and Jack. According to respondent mother, the court lacked subject matter jurisdiction because (1) the affidavit of the status of the minor child required by N.C. Gen. Stat. § 50A-209 (2005) inaccurately reported that Kristen and Jack had lived with respondents continuously since 2002, and (2) the petition was not served on either of the two older children. We find neither contention persuasive.

The juvenile petition or an affidavit attached to the petition must contain "the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period." N.C. Gen. Stat. § 50A-209(a). Our Supreme Court has recently held that the failure to comply with § 50A-209(a) does not prevent the court from exercising subject matter jurisdiction over the juvenile proceeding. *In re A.R.G.*, 361 N.C. 392, 398, 646 S.E.2d 349, 353 (2007).

In *A.R.G.*, DSS failed to provide the juvenile's addresses in the initial petition and failed to attach an affidavit providing such information. *Id.* at 394, 646 S.E.2d at 350. The Court pointed out that "[n]othing in [N.C. Gen. Stat. § 50A-209] suggests that the information required is jurisdictional" and, in fact, the language of the statute indicated to the contrary. *Id.* at 399, 646 S.E.2d at 353. The Court further noted that the statute "requires *both* parties to submit the information" and concluded that "[i]t would defy reason to suggest that a parent could defeat the jurisdiction of a trial court by his or her own noncompliance with the statute." *Id.*

If a total omission of the address information required by N.C. Gen. Stat. § 50A-209 does not divest the trial court of subject matter jurisdiction, then inaccurate information cannot divest the court of jurisdiction. Although respondent mother argues that the information was critical in determining who could have abused the children, the required address information for Kristen and Jack was known to respondents and was provided during the course of the hearing. As the Supreme Court reasoned, to hold that the deficiencies in the DSS petition "could have prevented the trial court from acquiring subject matter jurisdiction over the juvenile action would be to elevate form over substance. Such a holding would additionally impose jurisdictional limitations which the General Assembly clearly never intended when it sought to balance the interests of children with the rights of parents in juvenile actions." *A.R.G.*, 361 N.C. at 399, 646 S.E.2d at 353.

[3] With respect to service of the petition on Kristen and Jack, respondent mother cites no authority requiring such service in an initial adjudication. N.C. Gen. Stat. § 7B-406(a) (2005) provides that in neglect, abuse, and dependency proceedings, only the "parent, guardian, custodian, or caretaker" must be served with a summons attaching a copy of the petition. Accordingly, the failure to serve Kristen and Jack with the petition cannot be a basis for concluding that the trial court lacked subject matter jurisdiction.

IN RE M.G., M.B., K.R., J.R.

[187 N.C. App. 536 (2007)]

### III

**[4]** Respondents both contend that the court lacked subject matter jurisdiction as to all four children because the summons served on each respondent failed to name all four of the juveniles. Although the petition listed all four children, the summons served on respondent mother listed only Martin and Michelle, while the summons served on respondent father listed only Kristen and Jack.

In support of their argument, respondents cite *In re C.T. & R.S.*, 182 N.C. App. 472, 475, 643 S.E.2d 23, 25 (2007), in which this Court vacated the portion of an order terminating a mother's parental rights relating to R.S. when the summons issued "referenced" C.T., but did not "mention or reference" R.S. This Court noted that the controlling statute was N.C. Gen. Stat. § 7B-1106(a) (2005), which states in pertinent part: "Except as provided in G.S. 7B-1105, upon the filing of the petition [to terminate parental rights], the court shall cause a summons to be issued. The summons shall be directed to the following persons . . . who shall be named as respondents: (1) The parents of the juvenile . . . ." After noting that the "failure to issue a summons deprives the trial court of subject matter jurisdiction," the Court noted that the appellees had not cited "any case holding that subject matter jurisdiction existed where a statutorily required summons was *not issued* regarding a proceeding concerning a juvenile, a situation different from that presented by technical defects in *service* of a summons." *In re C.T. & R.S.*, 182 N.C. App. at 475, 643 S.E.2d at 25. Accordingly, the Court "vacate[d] the order on termination to the extent it terminates the parental rights of respondent in R.S." *Id.*

This case does not involve the termination of parental rights. The controlling statute is instead N.C. Gen. Stat. § 7B-406(a), which provides: "Immediately after a petition has been filed alleging that a juvenile is abused, neglected, or dependent, the clerk shall issue a summons to the parent, guardian, custodian, or caretaker requiring them to appear for a hearing at the time and place stated in the summons. . . . A copy of the petition shall be attached to each summons." Here, there can be no question that DSS has complied with § 7B-406(a). DSS filed a petition alleging that all four children were abused, neglected, and dependent; the clerk issued a summons to each of the respondent parents; and the summons attached the petition listing each of the four children.

Respondents have pointed to no authority—and we have found none—suggesting that the trial court lacks subject matter jurisdiction

IN RE M.G., M.B., K.R., J.R.

[187 N.C. App. 536 (2007)]

in an abuse, neglect, or dependency proceeding because of a failure to list all of the children on all of the summonses when each child has been listed on the summons for his or her biological parents. It is established that even when a summons is issued to only one parent of a child, the court still has jurisdiction to determine the status of the child in an abuse, neglect, and dependency proceeding. *In re Poole,* 151 N.C. App. 472, 476-77, 568 S.E.2d 200, 203 (2002) (Timmons-Goodson, J., dissenting) (holding that the failure to issue and serve summons on respondent father did not divest court of subject matter jurisdiction to find child dependent when summons was issued and served on mother), *adopted per curiam,* 357 N.C. 151, 579 S.E.2d 248 (2003). Thus, even assuming without deciding, that *C.T.* is relevant to § 7B-406(a) and requires a summons referencing each child, allocation of the names of the children among summonses based on who is the biological parent of the particular child is sufficient to vest the trial court with subject matter jurisdiction over that child.

Further, as this Court recently held, in these types of proceedings—in contrast to termination of parental rights proceedings—the trial court is not required to determine the culpability of each parent as to each child. *In re J.S.,* 182 N.C. App. 79, 86, 641 S.E.2d 395, 399 (2007). The Court explained:

> The purpose of abuse, neglect and dependency proceedings is for the court to determine whether the juvenile should be adjudicated as having the status of abused, neglected or dependent. . . . The purpose of the adjudication and disposition proceedings should not be morphed on appeal into a question of culpability regarding the conduct of an individual parent.

*Id.* As a result, there is no need to tie each child to each respondent, especially when the issue is only the caption of a summons that attaches the petition identifying all the children. Accordingly, the nature of the captions of the summonses in this case did not result in a lack of subject matter jurisdiction over the children.[3]

## IV

**[5]** Respondents next contend that the trial court erred in allowing DSS to amend its petition to add allegations regarding the sexual abuse of Michelle. N.C. Gen. Stat. § 7B-800 (2005) specifies that "[t]he court may permit a petition to be amended when the amendment does

---

3. Respondents have not contended or cited any authority suggesting that this approach denied them notice and an opportunity to be heard or otherwise prejudiced them.

IN RE M.G., M.B., K.R., J.R.

[187 N.C. App. 536 (2007)]

not change the nature of the conditions upon which the petition is based." Respondents contend that the original petition did not allege that Michelle was sexually abused and, therefore, the amendment necessarily changed "the conditions" upon which the petition was based as to Michelle. We agree.

In *In re D.C. & C.C.*, 183 N.C. App. 344, 346-47, 644 S.E.2d 640, 641 (2007), the initial petition alleged that D.C. was a neglected and dependent juvenile based on a lack of supervision and domestic violence. The respondent mother subsequently gave birth to C.C. and, two weeks later, the petitioner filed a petition alleging that C.C. was dependent. *Id.* at 346, 644 S.E.2d at 642. At trial, however, the petitioner proceeded on a theory of neglect as to C.C., and the trial court concluded that C.C. was indeed a neglected child. *Id.* at 349-50, 644 S.E.2d at 643. In reversing the order to the extent that it found C.C. to be neglected, this Court first held that the trial court "essentially amended the juvenile petition by allowing DSS to proceed on a condition not alleged in the petition." *Id.* (internal quotation marks omitted). The Court then concluded that adding the ground of neglect when the petition alleged only dependency violated N.C. Gen. Stat. § 7B-800. *Id.*

In this case, the original petition contained no allegations of sexual abuse as to Michelle, although it contained allegations that Kristen had been sexually abused. The abuse allegations relating to Michelle involved placement of Michelle and Martin with a person who left them in the care of someone whose home "was deplorable," respondent father's use of alcohol and marijuana, and respondents' domestic violence. Based on the same factual allegations, the petition also alleged that Michelle was a neglected and dependent child. The motion for leave to amend this petition sought to add allegations regarding recent disclosures that respondent father had inappropriate sexual conduct with Michelle that resulted in criminal charges.

We hold that adding the allegations of Michelle's sexual abuse changed the nature of the conditions relied upon in the original petition as to Michelle. Although DSS argued to the trial court and urges on appeal that the petition contained allegations of sexual misconduct with respect to Kristen, this argument ignores the fact that an abuse, neglect, and dependency proceeding focuses on the status of the child and not on the culpability of the parent. *See In re J.S.*, 182 N.C. App. at 86, 641 S.E.2d at 399. Because the new allegations gave

rise to a different status for Michelle than alleged in the original petition, they violated N.C. Gen. Stat. § 7B-800, even though the original petition alleged inappropriate sexual conduct by respondent father towards another child. Pursuant to *D.C.*, we must, therefore, vacate that portion of the order concluding that Michelle is a sexually abused juvenile as defined by N.C. Gen. Stat. § 7B-101(1)(d). *In re D.C. & C.C.*, 183 N.C. App. at 349-50, 644 S.E.2d at 643.[4]

## V

Respondents next challenge the merits of the trial court's determination that the children were neglected and abused.[5] "The role of this Court in reviewing an initial adjudication of neglect and abuse is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." *In re D.S.A.*, 181 N.C. App. 715, 717-18, 641 S.E.2d 18, 20 (2007) (internal quotation marks omitted). " 'In a non-jury neglect [and abuse] adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings.' " *Id.* at 717-18, 641 S.E.2d at 21 (quoting *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997)).

**[6]** Although respondent mother has assigned error to certain of the trial court's findings of fact and listed those assignments of error under the headings of the argument section of her brief, she has provided no argument as to why these findings were not supported by competent evidence. "Assignments of error not set out in the appellant's brief, or *in support of which no reason or argument is stated or authority cited*, will be taken as abandoned." N.C.R. App. P. 28(b)(6) (emphasis added). Consequently, respondent mother's assignments of error as to the findings of fact are deemed abandoned. *See In re A.H.*, 183 N.C. App. 609, 613, 644 S.E.2d 635, 638 (2007) ("Although respondent assigned error to many of the trial court's findings of fact, claiming that they were unsupported by competent evidence, those assignments of error were not brought forward in her brief. They are, therefore, deemed abandoned.").

---

4. Because of this holding, we need not address respondent mother's contention that she was not properly served with the motion to amend.

5. We address the arguments regarding Kristen and Jack in the interests of expediting review. In the event that the trial court concludes on remand that it lacks subject matter jurisdiction over Kristen and Jack, then it will be required to dismiss the petition as to those two children.

**IN RE M.G., M.B., K.R., J.R.**

[187 N.C. App. 536 (2007)]

**[7]** With respect to the court's conclusion that the minor children were abused, respondent mother argues only that "[i]n this case, [respondent father] is accused of hitting [Jack] and sexually abusing [Michelle] and [Kristen]. The only direct allegation against [respondent mother] is that she hit [Kristen] after [Kristen] was disrespectful. [Jack], [Kristen's] brother, testified that [Kristen] was a troublemaker." As we have discussed, however, *J.S.* confirms that in an abuse, neglect, and dependency proceeding, the question is whether the children were abused and not whether respondent mother committed the abuse.

Nevertheless, the definition of an abused child includes one whose parent, guardian, custodian, or caretaker "[c]reates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means." N.C. Gen. Stat. § 7B-101(1)(b). The trial court found that respondent mother "knew of [respondent father's] violent and abusive nature, his alcohol abuse, and she failed to take the necessary steps to protect the minor children. [Respondent mother] also witnessed many of the incidents where [respondent father] would consume alcohol to excess and act out upon her and the children." Further, respondent mother allowed respondent father to drive the children after he had consumed a large quantity of alcoholic beverages. These findings of fact are sufficient to support a determination that respondent mother "allow[ed] to be created a substantial risk of serious physical injury to the juvenile by other than accidental means." *Id.*

With respect to the conclusion that the children were neglected juveniles, respondent mother makes no specific argument as to how the findings of fact fail to meet the following definition of a neglected child:

> A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.

**IN RE M.G., M.B., K.R., J.R.**

[187 N.C. App. 536 (2007)]

N.C. Gen. Stat. § 7B-101(15). Accordingly, respondent mother has failed to demonstrate that the trial court erred in concluding that Martin, Michelle, Kristen, and Jack were abused and neglected juveniles.

[8] Respondent father also contends that the trial court's findings of fact are insufficient to support its conclusion that the children were abused as defined by N.C. Gen. Stat. § 7B-101(1)(b). He focuses, however, only on the finding of fact that respondent father hit Jack in the chest leaving a bruise. He overlooks the findings of fact regarding his domestic violence, alcohol abuse, and driving the children while intoxicated. Those findings, fully supported by the evidence, in turn provide ample support for the determination that respondent father "created a substantial risk of serious physical injury" to the children. N.C. Gen. Stat. § 7B-101(1)(b).

Respondent father also contends that the trial court erred in concluding that Kristen and Jack were abused pursuant to N.C. Gen. Stat. § 7B-101(1)(f), which permits an adjudication of abuse for a child whose parent "[e]ncourages, directs, or approves of delinquent acts involving moral turpitude committed by the juvenile." The court made the following findings of fact pertinent to this issue:

> 20. That [respondent father] gave beer to his children [Kristen] and [Jack] and offered them marijuana. Both of the minor children [Kristen] and [Jack] have observed [respondent father] roll marijuana cigarettes in their presence. [Jack] drank beer at [respondent father's] request and his insistence.

> 21. . . . . He told the minor child [Jack] that he heard he had been smoking. He proceeded to pull out a cigarette, put it in front of the minor child and demanded that he smoke it. The minor child [Jack] refused to smoke the cigarette. . . .

Respondent father does not dispute that the record contains evidence to support these findings.

Respondent father, however, points to testimony by Kristen that her father said "I would rather you come home and before you do your homework you ask me to get high and we'll go get high and then you can go do your homework, and I don't want you going out and getting high with your friends and going on the highway and going 90 miles an hour and dying, or getting in a car wreck." He then argues that he was making "an ill-attempted effort to show his children that they would not enjoy these activities"—conduct he contends may

amount to neglect, but does not amount to abuse under N.C. Gen. Stat. § 7B-101(1)(f).

The dispositive question is whether underage drinking, underage smoking, and marijuana use constitute "acts involving moral turpitude." We have been unable to find any authority and appellees have cited none suggesting that the conduct at issue in this case falls within the traditional definition of acts involving moral turpitude. Crimes involving moral turpitude include " 'act[s] of baseness, vileness, or depravity in the private and social duties that a man owes to his fellowman or to society in general.' " *Dew v. State ex rel. N.C. Dep't of Motor Vehicles*, 127 N.C. App. 309, 311, 488 S.E.2d 836, 837 (1997) (quoting *Jones v. Brinkley*, 174 N.C. 23, 27, 93 S.E. 372, 373 (1917)). *See also State v. Mann*, 317 N.C. 164, 170, 345 S.E.2d 365, 369 (1986) (reaffirming this definition of moral turpitude). Alternatively, moral turpitude is considered "[c]onduct that is contrary to justice, honesty, or morality." *Black's Law Dictionary*, 1030 (8th ed. 2004).

The conduct approved by respondent father is certainly illegal, but our courts have not equated illegality with moral turpitude. While drug dealing would amount to an act involving moral turpitude, *see Dew*, 127 N.C. App. at 312, 488 S.E.2d at 838 ("We hold as a matter of law that the felony of 'conspiracy to possess with intent to distribute marijuana' is a crime involving moral turpitude."), we have found no cases suggesting that illegal substance use standing alone rises to the same level. We agree that the trial court's findings of fact regarding respondent father's encouragement of smoking, drinking, and marijuana use by Kristen and Jack support a determination that they are neglected children, but hold that the conduct does not constitute abuse as defined in N.C. Gen. Stat. § 7B-101(1)(f). We, therefore, reverse that portion of the order concluding that Kristen and Jack were abused under N.C. Gen. Stat. § 7B-101(1)(f).

[9] Finally, respondent father contends that the trial court erred in concluding that Kristen is sexually abused as defined by N.C. Gen. Stat. § 7B-101(1)(d). Under that subsection, a child is abused if her parent, guardian, custodian, or caretaker

> [c]ommits, permits, or encourages the commission of a violation of the following laws by, with, or upon the juvenile: first-degree rape, as provided in G.S. 14-27.2; second degree rape as provided in G.S. 14-27.3; first-degree sexual offense, as provided in G.S. 14-27.4; second degree sexual offense, as provided in G.S. 14-27.5; sexual act by a custodian, as provided in G.S. 14-27.7;

crime against nature, as provided in G.S. 14-177; incest, as provided in G.S. 14-178; preparation of obscene photographs, slides, or motion pictures of the juvenile, as provided in G.S. 14-190.5; employing or permitting the juvenile to assist in a violation of the obscenity laws as provided in G.S. 14-190.6; dissemination of obscene material to the juvenile as provided in G.S. 14-190.7 and G.S. 14-190.8; displaying or disseminating material harmful to the juvenile as provided in G.S. 14-190.14 and G.S. 14-190.15; first and second degree sexual exploitation of the juvenile as provided in G.S. 14-190.16 and G.S. 14-190.17; promoting the prostitution of the juvenile as provided in G.S. 14-190.18; and taking indecent liberties with the juvenile, as provided in G.S. 14-202.1.

N.C. Gen. Stat. § 7B-101(1)(d).

In this case, the trial court concluded that there had been a violation of N.C. Gen. Stat. § 14-202.1 (2005), the taking of indecent liberties. In reaching this conclusion, the trial court found that respondent father "became drunk, walked up to the minor child [Kristen], grabbed her from behind and fondled her breasts;" that despite Kristen's objection, "he continued to grope the minor;" and that "[o]n another occasion, [respondent father] inappropriately touched the minor [Kristen] in the vaginal area."

Respondent father admits that these findings are supported by Kristen's testimony, but argues that "[n]othing in the evidence or findings supports that they were made for any sexual gratification." Our courts have, however, held that such conduct is sufficient to establish a violation of N.C. Gen. Stat. § 14-202.1. *See, e.g., State v. Bruce,* 90 N.C. App. 547, 551, 369 S.E.2d 95, 98 (concluding that when evidence indicated that on one occasion, defendant started rubbing victim under her shirt, "jury could properly infer that defendant's action in rubbing the victim's breasts was for the purpose of arousing or gratifying his sexual desire" and violated N.C. Gen. Stat. § 14-202.1), *disc. review denied,* 323 N.C. 367, 373 S.E.2d 549 (1988); *State v. Slone,* 76 N.C. App. 628, 631, 334 S.E.2d 78, 80 (1985) (holding that evidence that defendant placed his hand between victim's legs and "rubbed her vagina with his finger" was sufficient "to warrant the inference that the defendant willfully took indecent liberties with the child for the purpose of arousing or gratifying his sexual desire" within the meaning of N.C. Gen. Stat. § 14-202.1). Accordingly, the trial court in this case could properly conclude that Kristen was a sexually abused juvenile.

IN RE WILLIAMSON VILLAGE CONDOS.

[187 N.C. App. 553 (2007)]

Conclusion

We affirm the order to the extent that it concludes that Martin, Michelle, Kristen, and Jack were neglected juveniles; that Martin, Michelle, Kristen, and Jack were abused as defined by N.C. Gen. Stat. § 7B-101(1)(b); and that Kristen was sexually abused as defined by N.C. Gen. Stat. § 7B-101(1)(d). We reverse the order to the extent that it concludes that Michelle was sexually abused and that Kristen and Jack were abused as defined by N.C. Gen. Stat. § 7B-101(1)(f). Neither respondent has made any argument regarding the dispositional portion of the order, and, therefore, it is affirmed. Finally, we remand for findings of fact regarding the trial court's subject matter jurisdiction under the UCCJEA with respect to Kristen and Jack.

Affirmed in part; reversed in part; remanded in part.

Judges WYNN and STEELMAN concur.