STATE OF NORTH CAROLINA v. JAAMALL DENARIS OGLESBY

No. 683PA05

(Filed 24 August 2007)

1. **Appeal and Error— preservation of issues—incriminating statement—failure to renew objection at trial—failure to allege plain error—review under Appellate Rule 2**

    Although defendant failed to preserve the admissibility of his in-custody incriminating statement for review when he failed to renew his objection at trial following the denial of his pretrial motion *in limine* and failed to argue plain error because the amendment to N.C.G.S. § 8C-1, Rule 103(a)(2) is unconstitutional and Rule of Appellate Procedure 10(b)(1) thus applied, the Supreme Court exercised its discretion under Rule of Appellate Procedure 2 to review his contention where the amendment to Rule 103(a)(2) was presumed constitutional at the time of defendant's trial and defendant may have relied to his detriment on that law.

STATE v. OGLESBY

[361 N.C. 550 (2007)]

**2. Confessions and Incriminating Statements— motion to suppress—juvenile—guardian**

The trial court did not err in a first-degree murder, first-degree kidnapping, and attempted robbery with a firearm case by denying defendant juvenile's motion *in limine* to suppress the statement he made to law enforcement officers on 11 September 2002 under N.C.G.S. § 7B-2101 even though the juvenile had requested to telephone his aunt before making the statement, because: (1) defendant's aunt was not a guardian for purposes of the relevant statute, and an interpretation of the term "guardian" to encompass anything other than a relationship established by legal process would unjustifiably expand the plain and unambiguous meaning of the word; (2) from the testimony of defendant's aunt, it is apparent that she never had custody of defendant, that defendant had only stayed with her on occasion but not for any considerable length of time, and that she had never signed any school papers for him; and (3) the only evidence which could possibly support a contrary finding of fact is the aunt's testimony that she was a mother figure to defendant, which did not amount to the legal authority inherent in a guardian or custodial relationship.

**3. Sentencing— *Blakely* error—harmless error review**

The Court of Appeals' finding of *Blakely* error in aggravated sentences imposed for armed robberies, which it treated as structural error, is vacated and the cases are remanded to the Court of Appeals for harmless error review pursuant to *State v. Blackwell*, 361 N.C. 41 (2006).

Justice TIMMONS-GOODSON dissenting.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 174 N.C. App. 658, 622 S.E.2d 152 (2005), finding no error in part in judgments entered 28 May 2004 by Judge Catherine C. Eagles in Superior Court, Forsyth County, but remanding for resentencing on two counts of robbery with a dangerous weapon and to arrest judgment either on defendant's conviction for first-degree kidnapping or his conviction for attempted robbery with a dangerous weapon. Heard in the Supreme Court 7 May 2007.

STATE v. OGLESBY

[361 N.C. 550 (2007)]

*Roy Cooper, Attorney General, by Jonathan P. Babb, Special Deputy Attorney General, for the State-appellant/appellee.*

*M. Gordon Widenhouse, Jr. for defendant-appellee/appellant.*

BRADY, Justice.

In this case we determine whether an incriminating statement made by a juvenile during a custodial interrogation must be suppressed at trial, pursuant to N.C.G.S. § 7B-2101, when the juvenile had requested to telephone his aunt before making the statement. We hold that the statement need not be suppressed since defendant's aunt was not a "guardian" for purposes of the relevant statute. Accordingly, we affirm the decision of the Court of Appeals in part. We also vacate and remand the decision of the Court of Appeals in part for further proceedings.

## BACKGROUND

On 7 July 2003, the Forsyth County Grand Jury returned a true bill of indictment charging defendant with first-degree murder, first-degree kidnapping, and attempted robbery with a firearm in connection with the fatal shooting of Scott Gray Jester during the early morning hours of 10 September 2002. Jester's body had been discovered later the same morning near an exit ramp off Interstate 40 in Winston-Salem after he had sustained three gunshot wounds to the back of the head. On 3 November 2003, the Forsyth County Grand Jury also returned a true bill of indictment charging defendant with two counts of robbery with a dangerous weapon in connection with the robberies of two convenience stores on 7 September 2002 and on 8 September 2002. On 24 May 2004, defendant entered a plea of guilty to the two charges of robbery with a dangerous weapon, but the trial court postponed sentencing on those convictions until after defendant's trial on the three remaining charges.

Also on 24 May 2004, and before defendant's trial, the trial court heard defendant's motion to suppress an incriminating statement he made to law enforcement officers with the Winston-Salem Police Department during a custodial interrogation which had taken place on 11 September 2002, when defendant was sixteen years old. Defendant's contention was that his juvenile rights were violated during the interrogation because the detectives did not cease questioning him when he requested to telephone his aunt and that therefore the statement should be suppressed. At the conclusion of the pretrial

hearing, the trial court made findings of fact that defendant's aunt was not his guardian or custodian under N.C.G.S. § 7B-2101 and that, although defendant requested to telephone his aunt, this "was not a time specific request," nor did defendant say he would not speak with the officers until he was allowed to place the call. Based upon these findings, the trial court concluded that there was no statutory or constitutional violation of defendant's juvenile rights and denied defendant's motion to suppress.

On 28 May 2004, the jury found defendant guilty of first-degree murder under the felony murder rule, first-degree kidnapping, and attempted robbery with a firearm. The trial court entered judgment consistent with the jury's verdict, and defendant was sentenced to life imprisonment without parole for the felony murder conviction and in the presumptive ranges for the first-degree kidnapping and attempted robbery convictions. Also on 28 May 2004, the trial court entered judgment on the two charges of robbery with a dangerous weapon consistent with defendant's plea of guilty. The trial court sentenced defendant in the aggravated range for both convictions, finding the same aggravating factor for both: That defendant joined with more than one other person in the commission of the offense and was not charged with committing a conspiracy.

Defendant appealed to the Court of Appeals, which in a unanimous 6 December 2005 opinion found no error in part and remanded the case in part for resentencing. The State and defendant petitioned this Court for discretionary review of the Court of Appeals decision, and these petitions were subsequently allowed on 19 December 2006. The State has raised one issue before the Court on appeal: Whether the trial court committed reversible *Blakely* error by sentencing defendant in the aggravated range for his two convictions for robbery with a dangerous weapon. Defendant has raised three issues: (1) whether the trial court erred in denying his motion to suppress; (2) whether the trial court erred in ordering that defendant be restrained by leg shackles; and (3) whether defendant's conviction for murder should be vacated because the indictment did not set forth all the elements of first-degree murder.

## ANALYSIS

[1] We determine first whether the trial court erred in denying defendant's motion *in limine* to suppress the statement he made to law enforcement officers on 11 September 2002. The State contends that defendant should be barred from raising this issue on appeal

since he did not renew his objection at trial and has not argued, alternatively, that the trial court committed plain error by allowing the statement entered into evidence. *See* N.C. R. App. P. 10(c)(4); *State v. Golphin*, 352 N.C. 364, 449, 533 S.E.2d 168, 224 (2000), *cert. denied*, 532 U.S. 931 (2001).

As the Court of Appeals indicated, defendant may have relied to his detriment on a 2003 amendment to the North Carolina Rules of Evidence, which provides in pertinent part: "Once the [trial] court makes a definitive ruling on the record admitting or excluding evidence, *either at or before trial*, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." N.C.G.S. § 8C-1, Rule 103(a)(2) (2005) (emphasis added). There is a direct conflict between this evidentiary rule and North Carolina Rule of Appellate Procedure 10(b)(1), which this Court has consistently interpreted to provide that a trial court's evidentiary ruling on a pretrial motion is *not* sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial. *See State v. Roache*, 358 N.C. 243, 292, 595 S.E.2d 381, 413 (2004); *State v. Grooms*, 353 N.C. 50, 65-66, 540 S.E.2d 713, 723 (2000), *cert. denied*, 534 U.S. 838 (2001); *Golphin*, 352 N.C. at 449, 533 S.E.2d at 224; *State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (per curiam); *State v. Bonnett*, 348 N.C. 417, 437, 502 S.E.2d 563, 576-77 (1998), *cert. denied*, 525 U.S. 1124 (1999). For this reason, our intermediate appellate court has already held that Rule of Evidence 103(a)(2) is unconstitutional to the extent it conflicts with Rule of Appellate Procedure 10(b)(1). *See State v. Tutt*, 171 N.C. App. 518, 524, 615 S.E.2d 688, 692-93 (2005).

The Constitution of North Carolina expressly vests in this Court the "exclusive authority to make rules of procedure and practice for the Appellate Division." N.C. Const. art. IV, § 13, cl. 2. Although Rule 103(a)(2) is contained in the Rules of Evidence, it is manifestly an attempt to govern the procedure and practice of the Appellate Division as it purports to determine which issues are preserved for appellate review. Accordingly, we hold that, to the extent it conflicts with Rule of Appellate Procedure 10(b)(1), Rule of Evidence 103(a)(2) must fail. *See State v. Stocks*, 319 N.C. 437, 439, 355 S.E.2d 492, 493 (1987); *State v. Bennett*, 308 N.C. 530, 535, 302 S.E.2d 786, 790 (1983); *State v. Elam*, 302 N.C. 157, 160, 273 S.E.2d 661, 664 (1981).

As a consequence of the invalidity of Rule 103(a)(2) and the application of Appellate Rule 10(b)(1) to the instant case, defendant

has failed to preserve the admissibility of his incriminating statement for appellate review. Nor has defendant argued that the trial court committed plain error. *See* N.C. R. App. P. 10(c)(4); *Golphin*, 352 N.C. at 449, 533 S.E.2d at 224. Nevertheless, as the Court of Appeals noted, the amendment to Rule 103(a)(2) was presumed constitutional at the time of defendant's trial, which was held before the Court of Appeals decision in *Tutt*. Given the harsh consequences of barring review when a defendant has relied to his detriment on existing law, we exercise this Court's discretion under Appellate Procedure Rule 2 "to prevent manifest injustice" to defendant and to review his contention on the merits. *See* N.C. R. App. P. 2; *see also Stocks*, 319 N.C. at 439, 355 S.E.2d at 493; *Elam*, 302 N.C. at 161, 273 S.E.2d at 664.

**[2]** An accused juvenile's rights during a custodial interrogation are codified in N.C.G.S. § 7B-2101, which states in part that "[a]ny juvenile in custody must be advised prior to questioning . . . [t]hat the juvenile has a right to have a parent, guardian, or custodian present during questioning." N.C.G.S. § 7B-2101(a)(3) (2005).[1] The statute further provides that "[i]f the juvenile indicates in any manner and at any stage of questioning . . . that the juvenile does not wish to be questioned further, the officer shall cease questioning." *Id.* § 7B-2101(c) (2005). Before allowing evidence to be admitted from a juvenile's custodial interrogation, a trial court is required to "find that the juvenile knowingly, willingly, and understandingly waived the juvenile's rights." *Id.* § 7B-2101(d) (2005). Defendant argues that the interrogation should have ceased when he requested to telephone his aunt, whom he asserts was effectively a "guardian," and that therefore the trial court erred under N.C.G.S. § 7B-2101(d) by denying his motion to suppress the incriminating statement he made shortly after his request was denied by the interrogating officers.

Clearly, defendant was entitled by N.C.G.S. § 7B-2101(a)(3) to have a "parent, guardian, or custodian" present during his interrogation. However, an "aunt" is not an enumerated relation in the statute, and an interpretation of the term "guardian" to encompass anything other than a relationship established by legal process would unjustifiably expand the plain and unambiguous meaning of the word. *See Black's Law Dictionary* 566 (abr. 7th ed. 2000) (defining "guardian"

---

1. N.C.G.S. § 7B-101 defines "juvenile" to mean "[a] person who has not reached the person's eighteenth birthday and is not married, emancipated, or a member of the armed forces of the United States." As a result, N.C.G.S. § 7B-2101 applies to defendant even though he was tried as an adult, notwithstanding the heading of Chapter 7B, Article 21, which reads: "Law Enforcement Procedures in Delinquency Proceedings." *See State v. Fincher*, 309 N.C. 1, 9-11, 305 S.E.2d 685, 691-92 (1983).

as "[o]ne who has the *legal* authority and duty to care for another's person or property" (emphasis added)). We are bound by well-accepted rules of statutory construction to give effect to this plain and unambiguous meaning and we therefore decline any attempt to ascertain a contrary legislative intent. *See, e.g., In re A.R.G.*, 361 N.C. 392, 396, 646 S.E.2d 349, 351 (2007).

The trial court made a finding of fact that defendant's aunt was not his guardian or custodian. From the testimony of defendant's aunt, it is apparent that she never had custody of defendant, that defendant had only stayed with her on occasion but not for any considerable length of time, and that she had never signed any school papers for him. As the trial court's finding of fact is supported by competent evidence, it cannot be disturbed on appeal. *See State v. Ripley*, 360 N.C. 333, 339, 626 S.E.2d 289, 293 (2006). Moreover, the only evidence which could possibly support a contrary finding of fact is the aunt's testimony that she was "a mother figure" to defendant. However, this does not amount to the *legal* authority inherent in a guardian or custodial relationship. Defendant's aunt was clearly not a statutory person, and defendant therefore had no right to have her present during questioning. Thus, we affirm in part the decision of the Court of Appeals.

**[3]** However, we vacate the portion of the Court of Appeals decision in which that court found *Blakely* error in defendant's aggravated sentences for robbery with a dangerous weapon, which it treated as structural error, and remand to the Court of Appeals for harmless error review pursuant to *State v. Blackwell*, 361 N.C. 41, 42, 49-51, 638 S.E.2d 452, 453, 458-59 (2006), *cert. denied*, —— U.S. ——, 127 S. Ct. 2281, 167 L. Ed. 2d 1114 (2007). As to the additional issues presented in defendant's petition, we conclude that discretionary review was improvidently allowed.

AFFIRMED IN PART; VACATED AND REMANDED IN PART; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.

Justice TIMMONS-GOODSON dissenting.

Because I believe that the majority erroneously elevates form over substance in casting the dispositive issue in this case as the subsequently determined legal status of the aunt instead of the contemporaneous state of mind of the juvenile and police officers during interrogation, I respectfully dissent.

Our legislature has provided that "[a]ny juvenile in custody must be advised prior to questioning . . . [t]hat the juvenile has a right to have a parent, guardian, or custodian present during questioning[.]" N.C.G.S. § 7B-2101 (2005). Juveniles are awarded special consideration in light of their youth and limited life experiences. *In re Stallings*, 318 N.C. 565, 576, 350 S.E.2d 327, 333 (1986) (Martin, J., dissenting) ("Our criminal justice system recognizes that their immaturity and vulnerability sometimes warrant protections well beyond those afforded adults. It is primarily for that reason that a separate juvenile code with separate juvenile procedures exists.").

This is why our courts have consistently recognized that " '[t]he [S]tate has a *greater* duty to protect the rights of a respondent in a juvenile proceeding than in a criminal prosecution.' " *In re T.E.F.*, 359 N.C. 570, 575, 614 S.E.2d 296, 299 (2005) (quoting *State v. Fincher*, 309 N.C. 1, 24, 305 S.E.2d 685, 699 (1983) (Harry Martin, J., concurring) (alterations in original)); *see also In re Meyers*, 25 N.C. App. 555, 558, 214 S.E.2d 268, 270 (1975) (stating that in a juvenile proceeding, unlike an ordinary criminal proceeding, the burden upon the State to see that a juvenile's rights are protected is increased rather than decreased). Though not paramount, age is an important factor in assessing the possible violation of constitutional or statutory rights. *See id.* ("Although a confession is not inadmissible merely because the person making it is a minor, to be admissible it must have been voluntary, and the age of the person confessing is an additional factor to be considered in determining voluntariness."(internal citation omitted)).

"Once a juvenile defendant has requested the presence of a parent, or any one of the parties listed in the statute, defendant may not be interrogated further 'until [counsel, parent, guardian, or custodian] has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.' " *State v. Branham*, 153 N.C. App. 91, 95, 569 S.E.2d 24, 27 (2002) (quoting *Michigan v. Jackson*, 475 U.S. 625, 626, 106 S. Ct. 1404, 1406, 89 L. Ed. 2d 631, 636 (1986) (alterations in original)). In the past, our appellate courts have held that contravention of these juvenile rights is akin to *Miranda* violations. *State v. Smith*, 317 N.C. 100, 106, 343 S.E.2d 518, 521 (1986), *abrogated on other grounds by State v. Buchanan*, 353 N.C. 332, 543 S.E.2d 823 (2001). In *Smith*, we applied the rule requiring all interrogation to cease when an adult defendant requests an attorney to a juvenile who requests an attorney, parent, guardian, or custodian. *Id; see also State v. Hunt*, 64 N.C.

App. 81, 86, 306 S.E.2d 846, 850 (holding that juvenile defendant's *Miranda* rights were violated when the police continued to interrogate him after he requested that his parents be present), *disc. rev. denied*, 309 N.C. 824, 310 S.E.2d 354 (1983). The burden rests on the State to show the juvenile defendant made a knowing and intelligent waiver of such *Miranda* rights. *State v. Miller*, 344 N.C. 658, 666, 477 S.E.2d 915, 920 (1996) (citing *State v. Simpson*, 314 N.C. 359, 367, 334 S.E.2d 53, 59 (1985)).

In evaluating whether such a waiver was knowing and intelligent, we consider the relevant state of mind of reasonable actors during the situation, and not with the benefit of hindsight. *See State v. Davis*, 305 N.C. 400, 410, 290 S.E.2d 574, 580-81 (1982) (describing the test for determining whether someone is in police custody as whether a "reasonable person in the suspect's position would believe that he had been taken into custody or otherwise deprived of his freedom of action was deprived in any significant way" (citing *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980))). Seen in this light, the detectives had no way of knowing the legal status of the juvenile's aunt at the time of the taped confession.

It is telling that even appellate courts have not always construed the statute as narrowly as the majority seems to indicate is required. In a case in which the shoe was on the other foot and the State sought to have an aunt recognized as complying with this statute in an analogous situation, the Court of Appeals held that an aunt constituted a guardian for the purpose of admitting a defendant's confession, even though she did not fall into any of the statute's enumerated categories. *State v. Jones*, 147 N.C. App. 527, 539-40, 556 S.E.2d 644, 652 (2001) (finding aunt was guardian "within the spirit and meaning of the Juvenile Code," even though she did not meet the legal definition set therein or fit into the enumerated categories), *disc. rev. denied and appeal dismissed*, 355 N.C. 351, 562 S.E.2d 427 (2002).

From a policy perspective, we have long held that whether evidence is admitted or excluded under *Miranda* depends on whether exclusion of the evidence would deter improper conduct by law enforcement. *State v. May*, 334 N.C. 609, 613, 434 S.E.2d 180, 182 (1993), *cert. denied*, 510 U.S. 1198, 114 S. Ct. 1310, 127 L. Ed. 2d 661 (1994). The majority's holding effectively discourages police officers from complying with the strictures of the Juvenile Code. Since it is uncontested that (a) the juvenile's confession in this case would be inadmissible if the individual requested had fallen into the requisite

## STATE v. OGLESBY

[361 N.C. 550 (2007)]

category, and (b) the detectives were not aware of the aunt's precise legal status when they chose to press ahead in their interrogation, policy considerations also favor excluding the taped confession. Therefore, I would hold the confession inadmissible.[2]

A test centering on the circumstances of the aunt *as known to the detectives during the interrogation*, rather than following a subsequent legal determination, fits in better with the structure and stated objectives of the Juvenile Code.[3] Such a test is more aptly geared to our oft-stated maxim that the burden of proof to show that the juvenile made a knowing and intelligent waiver of his rights lies with the State. *Miller*, 344 N.C. at 666, 477 S.E.2d at 920. Taking the majority's reasoning to its logical conclusion, police could decline a defendant's request for counsel and still use his subsequent statements as evidence if the requested attorney turned out to have unrelated professional licensing problems such as a shortfall in CLE credits or delinquency in Bar dues. Such a scenario would be self-evidently problematic. Yet I believe it is analytically indistinguishable from the majority's current holding.

Since I believe the majority erroneously shifts the pivotal test from the contemporaneous knowledge of the police officers to the subsequently ascertained legal status of the aunt, I cannot agree with the majority's reasoning as currently stated, and respectfully dissent.

---

2. The majority's holding is likely to have wider repercussions because of the large number of North Carolina minors in nontraditional households. *See* Child Welfare League of Am., *North Carolina's Children in 2007*, available at http://www.cwla.org/advocacy/statefactsheets/2007/northcarolina.pdf (last visited Aug. 20, 2007) (21.7% of the 10,077 children in North Carolina not in parental custody on 30 September 2004 resided with relatives.)

3. The need for special protection is wellfounded since at least two empirical studies show that "the vast majority of juveniles are simply incapable of understanding their *Miranda* rights and the meaning of waiving those rights." Trey Meyer, Comment, *Testing the Validity of Confessions and Waivers of the Self-Incrimination Privilege in the Juvenile Courts*, 47 U. Kan. L. Rev. 1035, 1050-51 (1999).