STATE OF NORTH CAROLINA
v.
HENRY TYRONE RANDOLPH

No. COA12-688

Filed 18 December 2012

**1. Evidence—defendant's oral and written statements— admissible—no plain error**

Defendant was not entitled to a new trial in a second-degree sexual offense case because evidence "of and about" a written instrument prepared by a police investigator was not improperly admitted at trial. Defendant's oral statements made to the investigator were admissible, and assuming but in no way deciding that it was error for the trial court to allow the State to characterize the written instrument as defendant's "statement," a different result would not have been reached at trial absent such characterization.

**2. Sexual Offenses—jury instructions—use of defendant's comments—within trial court's discretion**

The trial court did not err in a second-degree sexual offense case by failing to give a limiting instruction during the jury charge

STATE v. RANDOLPH

[224 N.C. App. 521 (2012)]

regarding the State's use of defendant's Miranda-inadmissible comments on cross-examination. This argument was subject to plain error review as defendant did not object to the jury instruction at trial and the instruction on the State's use of the evidence in question that the trial court elected to give was within its discretion.

**3. Sexual Offenses—sufficient evidence—sexual act**

The trial court did not err by denying defendant's motion to dismiss a second-degree sexual offense charge because the State presented insufficient evidence of a requisite "sexual act" on the part of defendant.

**4. Evidence—second-degree sexual offense—testimony— other crimes—invited error—not prejudicial**

The trial court did not commit plain error in a second-degree sexual offense case by admitting via testimony evidence regarding other crimes. The admission of some of the evidence was invited error and the introduction of the remaining evidence was not so prejudicial as to have tilted the scales and caused the jury to reach its verdict.

**5. Evidence—second-degree sexual offense—opinion evidence— narrative of investigation**

The trial court did not err in a second-degree sexual offense case by admitting the State's opinion evidence that defendant had in fact sexually abused the victim. The police investigator's testimony was merely a narrative of his investigation and was not being offered as expert or lay testimony probative on the issue of defendant's guilt.

Appeal by defendant from judgment entered 13 October 2011 by Judge Jack W. Jenkins in Wayne County Superior Court. Heard in the Court of Appeals 24 October 2012.

*Attorney General Roy Cooper, by Assistant Attorney General John P. Barkley, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Henry Tyrone Randolph ("Defendant") appeals from judgment entered after a jury convicted him of second-degree sexual offense. Defendant contends he is entitled to a new trial because the trial court erred in: (1) admitting evidence concerning a writing the State inaccurately characterized as Defendant's "statement"; (2) failing to provide the jury with a limiting instruction concerning the proper use of the substantive portions of this "statement" the State used to cross-examine Defendant; (3) denying Defendant's motion to dismiss the charge against him in light of the State's failure to put on sufficient evidence of a requisite "sexual act"; (4) instructing the jury on a theory of "sexual act" not supported by the evidence; (5) admitting certain past "bad acts" evidence; and (6) admitting improper opinion evidence. We find no prejudicial error.

## I. Factual and Procedural History

On 1 November 2010, the Wayne County Grand Jury indicted Defendant for one count of first-degree forcible sexual offense, one count of taking indecent liberties with a minor, and one count of lewd and lascivious act with a minor. Defendant pled not guilty to all three counts, and the charges came on for trial at the 10 October 2011 Special Criminal Session of Wayne County Superior Court.

The State's evidence tended to show the following. In the mid-1990s, Defendant met Robin Sheffield ("Sheffield") and Dionne Vann ("Vann"). Both women were Defendant's contemporaries and recent mothers. Sheffield's daughter was named Tanya and Vann's daughter was named Barbara.[1] Defendant formed friendships with both women and their children. Defendant's friendship with Sheffield included a long off-and-on sexual relationship.

For a decade or more, Defendant, Sheffield, Vann, and their two daughters were close friends. Defendant often baby sat Barbara and Tanya when they were very young. He spent time and money on the girls, and counseled them as a surrogate father as they grew older. Both girls occasionally spent the night at Defendant's home. With Sheffield's consent, Tanya spent almost every weekend at Defendant's house. Sheffield testified Defendant had a paternal relationship with Tanya, and that she thought he was the type of person that "every parent would want in their child's life." Barbara testified Defendant was a friend of her mother, and that she viewed him as a father figure. At least one of the girls referred to Defendant as "Uncle Ty."

1. Pseudonyms are used to protect the minors' identities.

In 2010 Barbara, then age 16, accused Defendant of sexually abusing her. She testified that on 4 September 2010 she played basketball with Defendant, went to Defendant's house, and laid down on Defendant's bed. Barbara testified that Defendant then laid down next to her, touched her above her clothes around her vaginal area, pulled her underwear down, "put two fingers inside of [her]" against her will, got next to her, and "started licking all over [her] and stuff." After the incident, Barbara sent Defendant a text message on 17 September 2010 from her job which read: "Sorry to tell you I have to tell my mom what happened because ever since that night I've been irritated and I got a discharge. I got to go to the doctor. [sic]" Defendant responded by texting "Do What?" and "Call me?". When Barbara did not respond, Defendant went to Barbara's workplace, asked Barbara about her text, and then left. Barbara then called Vann from work, was taken to the Goldsboro police station, and gave a statement to police in which she accused Defendant of having touched her inappropriately.

Sheffield testified that after she learned of Barbara's allegations, she asked her daughter Tanya if Defendant had ever touched her inappropriately. Tanya initially said that Defendant had not touched her. She later recanted and told Sheffield that she had been touched by Defendant on two separate occasions, the first on 8 May 2010 when he touched her on her breast and vaginal area while she was sleeping on a couch in Defendant's house, and a second time on 10 September 2010 when she woke up naked with vaginal bleeding after falling asleep at Defendant's house.

Goldsboro police arrested Defendant on 18 September 2010 and incarcerated Defendant in the county jail later that day. At some point, Defendant requested to speak with Investigator Doug Bethea. Defendant remained in jail during the next two days until the morning of 20 September 2010. That morning, Investigator Bethea went to the jail, retrieved Defendant, and brought him to the police station for interrogation. There, Investigator Bethea showed Defendant a written waiver of rights form. Defendant wrote on the rights form that he did not understand he had been charged with criminal offenses, and that an attorney had "not yet" been appointed to represent him. Defendant did sign a pre-printed *Miranda* waiver.

Following this exchange, Investigator Bethea started questioning Defendant in the interrogation room at 8:57 a.m. After several minutes of interrogation, Investigator Bethea began writing on a piece of

paper and then asked Defendant to sign the written instrument. However, Defendant said he was afraid Investigator Bethea had "change[d] things" and "turned what he said inside out," and refused to sign. At 9:21 a.m., Defendant said he was tired of answering questions and "clearly indicated to [Investigator Bethea] . . . he . . . didn't want to answer any more questions." However, Investigator Bethea "kept asking [Defendant] questions" and "kept telling [Defendant] '[i]f you got something that you need to tell me, you need to tell me.' " Defendant responded to Investigator Bethea's further interrogation by repeatedly examining his arrest warrants, nervously worrying about prison time, and orally responding to Investigator Bethea's questions. Investigator Bethea hand wrote more notes as the interrogation progressed. At about 11:00 a.m., Investigator Bethea once again asked Defendant to sign the writing he had produced. Defendant refused to "sign" the writing, but did initial various places on the writing "just for [Investigator Bethea's] satisfaction."

Before trial, Defendant filed a motion seeking to suppress any and all evidence of post-arrest comments he allegedly made to Investigator Bethea on the morning of 20 September 2010, including the writing prepared by Investigator Bethea. Defendant renewed his motion at the start of trial, but the court deferred ruling at that time. The motion was heard near the end of the State's case-in-chief, in anticipation of the State calling Investigator Bethea to testify.

At that hearing, Defendant argued the evidence was inadmissible because it was obtained in violation of his *Miranda* rights. He further argued that there was no evidence of any "statement" he made, signed, or adopted. During the motion to suppress hearing, the trial court observed that Investigator Bethea "[n]ever represented that he was trying to capture [Defendant's comments] word for word," that the written instrument unlikely "capture[d] everything that was said in the course of" the interrogation, and that the court was "having trouble with [the State's argument] that the statement is somehow a verbatim transcript." The trial court found that Defendant "did not sign any statement that ultimately was written out. Whatever statements were written out were not . . . in his handwriting. He did put some initials on [Investigator Bethea's notes] but they were sporadic and it doesn't seem to be any sort of rhyme or reason to them; they're just sort of sporadic here and there." The trial court also found that Defendant's "no" answer on the rights form "suggest[s] that [Defendant] did not understand that he had been charged with criminal offenses."

At the end of the hearing, the trial court orally granted Defendant's motion to suppress in part.[2] The court suppressed the State's evidence regarding comments Defendant made to Investigator Bethea after 9:21 a.m., including the written instrument prepared by Investigator Bethea, on the grounds that:

> [t]he defendant did give an indication that he was tired of answering questions at or about 9:21, and thereafter additional statements were taken, which, in the Court's opinion, should not have been, and those statements should not be used against the defendant because they would violate the defendant's constitutional rights.

However, the trial court ruled that the State's evidence regarding comments Defendant made between 8:57 a.m. and 9:21 a.m. were admissible.

Investigator Bethea testified immediately after the trial court's ruling. He was the last witness called by the State. At the close of the State's evidence, the trial court dismissed the first-degree sexual offense charge for insufficient evidence but determined there was sufficient evidence of the lesser included offense of second-degree sexual offense to proceed on that charge.

Defendant testified at trial, repeatedly denied he ever inappropriately touched Barbara or Tanya, and suggested both girls were fabricating stories because he was ending or had ended his sexual relationship with Tanya's mother Sheffield. On cross-examination and without objection, the prosecutor marked the writing Investigator Bethea made during the 20 September 2010 interrogation as State's Exhibit 11, characterized the writing as "[D]efendant's statement," questioned Defendant about his "statement," and had Defendant read his "statement" to the jury twice.

The jury found Defendant guilty of second-degree sexual offense involving Barbara, but not guilty of the two counts related to the alleged touching of Tanya. On 13 October 2011, the trial court sentenced Defendant to 83 months minimum imprisonment, and subjected Defendant to lifetime sex offender registration and satellite-

---

2. Because the only two witnesses to testify at the hearing (Investigator Bethea and arresting Officer Chris Irby) presented uncontroverted testimony, the trial court was not required to enter a written order in the matter. *See State v. Braswell*, ___ N.C. App. ___, ___, 729 S.E.2d 697, 700 (2012) ("Pursuant to N.C. Gen. Stat. § 15A–977(f) (2011), the trial judge must set forth in the record his findings of facts and conclusions of law. This statute has been interpreted as mandating a written order *unless* (1) the trial court provides its rationale from the bench, and (2) there are no material conflicts in the evidence at the suppression hearing." (citations and quotation marks omitted)).

based monitoring orders. Defendant gave oral notice of appeal in open court.

## II. Jurisdiction

As Defendant appeals from the final judgment of a superior court, an appeal lies of right to this Court pursuant to N.C. Gen. Stat. § 7A–27(b) (2011).

## III. Analysis

Defendant raises six issues on appeal, which we address in turn.

### A. Improper Use and Characterization of Defendant's "Statement"

[1] Defendant first argues that he is entitled to a new trial because evidence "of and about" a written instrument prepared by Investigator Bethea was improperly admitted at trial. We disagree.

As noted above, Defendant brought a Motion to Suppress before trial, seeking to exclude "any and all" evidence regarding statements he made to Investigator Bethea on the morning of 20 September 2010. Defendant moved to suppress on both *Miranda* grounds and on the basis that the written instrument prepared by Investigator Bethea was "not the statement of the defendant." At trial, the court granted Defendant's motion in part, on constitutional grounds, and suppressed all evidence concerning statements made by Defendant *after* 9:21 a.m., including the written instrument. The trial court did not suppress evidence related to oral statements made by Defendant prior to 9:21 a.m.

Defendant raises two arguments with respect to evidence of his purported "statement" being introduced at trial. First, Defendant contends that the substance of Investigator Bethea's testimony regarding Defendant's comments made prior to 9:21 a.m., which the trial court deemed admissible, should have been excluded under the rationale of *State v. Walker*, 269 N.C. 135, 152 S.E.2d 133 (1967). Second, Defendant objects to the use and introduction of the written instrument prepared by Investigator Bethea during his cross-examination.

### 1. Direct Examination of Investigator Bethea

With respect to Defendant's argument regarding the substance of Investigator Bethea's testimony, the State contends we should review for plain error, because "[t]he Motion to Suppress the introduction of Defendant's statement was not enough to preserve [the] objection . . .

once the evidence was introduced without objection." The State argues "Defendant was required to object to testimony regarding the statement," and failed to do so. We disagree with the State that Defendant has failed to preserve his argument.

The North Carolina Rules of Evidence provide that a Defendant seeking to preserve an issue for appeal "need not renew an objection" once the trial court has "made a definitive ruling on the record." N.C. R. Evid. 103(a)(2). However, our Supreme Court has recognized that "[t]here is a direct conflict between this evidentiary rule and [the North Carolina Rules of Appellate Procedure], which this Court has consistently interpreted to provide that a trial court's evidentiary ruling on a pretrial motion is *not* sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial." *State v. Oglesby*, 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007). Because the North Carolina Constitution vests in our Supreme Court " 'the exclusive authority to make rules of procedure and practice for the Appellate Division,' " any conflict must be resolved in favor of the Appellate Rules and the case law interpreting them. *Id.* (quoting N.C. Const. art. IV, § 13, cl. 2).

Nevertheless, even under our precedent requiring renewal of an objection at trial, Defendant has preserved this argument for appeal. Defendant filed a written pre-trial motion to suppress evidence in which he moved to suppress "any and all" evidence of "statements made by the defendant." Defendant renewed this motion at the start of trial, but agreed at the request of the trial court to defer hearing on the matter until the issue arose. Defendant renewed his objection to the evidence when the trial court convened a voir dire of Investigator Bethea at trial, and once again stated the basis for his objection. At the conclusion of voir dire, the trial court ruled on Defendant's Motion to Suppress. The State then immediately called Investigator Bethea to testify before the jury, where testimony which formed part of the basis of Defendant's Motion to Suppress was elicited. Although Defendant did not object again during Investigator Bethea's testimony, he did object in anticipation of this challenged testimony. Thus under these facts, where Defendant filed a proper pre-trial motion to suppress on which ruling was deferred until trial, we hold Defendant has preserved this issue for appeal where his objection at trial prompted the court to hold a hearing addressing the merits of the pretrial motion. Therefore, we review for prejudicial error. Under a prejudicial error analysis, "[t]his Court considers whether there was a reasonable possibility that, had the error in question not been com-

mitted, a different result would have been reached at trial." *State v. Stanley*, ___ N.C. App. ___, ___, 713 S.E.2d 196, 199 (2011).

Immediately following the court's ruling on Defendant's motion to suppress, the State called Investigator Bethea. Defendant objects on appeal to the following portion of Investigator Bethea's testimony:

> Q. What did you do when you got to the police department?
>
> A. I took him in, had him have a seat in the interview room number 1. I asked him did he want anything to drink and did you need any snacks. I told him where the bathrooms were. Once we got in there, I read him his Fifth and Sixth amendment rights.
>
> Q. What did you do after that?
>
> A. Well, once I—we went over the form, he decided—he made the decision to talk to me. And—
>
> Q. What did he say?
>
> A. We discussed what he—what he had said in the first part of our interview.
>
> Q. And what did he say in the first part of your interview?
>
> A. He stated that she had told him she had a discharge from her vaginal area.
>
> Q. Who is "she"?
>
> A. [Barbara]. He arrived at work to talk to her about it and asked her what was the deal. She didn't know where it had come from. Stated that on Friday she, being [Barbara], was over at his house. She took a shower and came and laid on the bed beside him. He said, "Beside me." She had on shorts, panties, sports bra, and a T-shirt. He said, I laid my arm across her body while she was on the phone. I asked her was she going to get off the phone. I turned the other way, away from her.
>
> Q. Did the defendant say anything at all about how he came to know that the defendant—that—did the defendant say how he knew that [Barbara] had on panties and a sports bra under her shorts and T-shirt?

A. We had been in conversation, and all he did was just come out and I, you know—I was asking questions and he would answer. And these—this is all he said. He didn't say anything else.

Q. Okay. What did you do when you concluded taking the defendant's statement?

A. Are you talking about at that point in time or—

Q. At the end of your interview. A. At the end of our interview? I escorted him back to the jail.

Defendant asserts this testimony should have been excluded under the rationale of *Walker*, 269 N.C. 135, 152 S.E.2d 133.

In *Walker*, our Supreme Court held:

If a statement purporting to be a confession is given by accused, and is reduced to writing by another person, before the written instrument will be deemed admissible as the written confession of accused, he must in some manner have indicated his acquiescence in the correctness of the writing itself. If the transcribed statement is not read by or to accused, and is not signed by accused, or in some other manner approved, or its correctness acknowledged, the instrument is not legally, or per se, the confession of accused; and it is not admissible in evidence as the written confession of accused.

269 N.C. at 139, 152 S.E.2d at 137 (quotation marks and citations omitted). Thus, *Walker* stands for the proposition that the State may not introduce evidence of a written confession unless that written statement bears certain indicia of voluntariness and accuracy. However, so long as oral statements are not obtained in violation of the constitutional protections against self-incrimination or due process, a "defendant's own statement is admissible when offered against him at trial as an exception to the hearsay rule." *State v. Chapman*, 359 N.C. 328, 354, 611 S.E.2d 794, 815 (2005) (citing N.C. R. Evid. 801(d)).

Here, Investigator Bethea merely testified as what Defendant told him prior to 9:21 a.m. on 20 September 2010. The trial court held that statements made by Defendant prior to 9:21 a.m. were not constitutionally inadmissible, and Defendant does not argue differently on appeal. As explained below, the State was permitted to use the constitutionally suppressed evidence on *cross-examination* of Defendant

to impeach his testimony. During the State's case-in-chief however, no written manifestation of Defendant's comments prior to 9:21 a.m. was introduced or read to the jury. Therefore, *Walker* does not bar Investigator Bethea's testimony regarding Defendant's oral statements made prior to 9:21 a.m., and Defendant's argument is overruled.

We also disagree with Defendant that the two isolated references to his "statement," made during Investigator Bethea's testimony constituted prejudicial error when viewed in light of the later testimony elicited from Defendant discussed below.

*2. Cross Examination of Defendant*

Defendant next argues that under the holding of *Walker*, it was improper for the State, during cross-examination, to introduce and characterize the written instrument prepared by Investigator Bethea as Defendant's "statement."

On direct examination, defense counsel elicited testimony from Defendant regarding his interaction with Investigator Bethea, including both a denial that he had given any "statement," as well as testimony specifically addressing, and denying, several of the inculpatory portions of the written instrument. Accordingly, Defendant may not argue on appeal that introduction of the substance of the written instrument on cross-examination to impeach Defendant constituted error. *See State v. Jones*, ___ N.C. App. ___, ___, 711 S.E.2d 791, 796 (2011) (observing that a defendant may not request a new trial on the basis of error he causes or joins in causing). Defendant could have avoided any discussion of the written instrument entirely by simply declining to testify. Therefore, Defendant is limited only to arguing that the prosecution's characterization of the written instrument as "Defendant's statement" was improper.

Assuming but in no way deciding that it was error for the trial court to allow the State to characterize the written instrument as Defendant's "statement," we cannot conclude that "a different result would have been reached at trial" absent such characterization. *Stanley*, ___ N.C. App. at ___, 713 S.E.2d at 199. Defendant has not demonstrated that the State's characterization of the written instrument as "Defendant's statement" caused the jury to accept it as such. To the contrary, the record reveals Defendant took the stand, denied that he had acquiesced to any "statement," and denied specific admissions contained in the purported "statement." The State subsequently attempted to impeach Defendant's testimony. This ultimately presented the jury

with the question of whether Defendant was credible in his denial. Defendant has not met his burden of demonstrating prejudice.

## B. Failure to Provide a Limiting Instruction

**[2]** Defendant next argues that the trial court erred by failing to give a limiting instruction during the jury charge regarding the State's use of Defendant's *Miranda* inadmissible comments on cross-examination. Specifically, Defendant contends the trial court failed to instruct the jury that this evidence "was admissible for only one limited purpose, that it could not be considered as substantive evidence of guilt, and that it could only be considered as non-substantive impeachment evidence." We disagree.

Preliminarily, we note that Defendant did not object to the jury instruction at trial; therefore this argument is subject to plain error review. *See State v. Oakman*, 191 N.C. App. 796, 798, 663 S.E.2d 453, 456 (2008) ("A defendant who does not object to jury instructions at trial will be subject to a plain error standard of review on appeal."). "In deciding whether a defect in the jury instruction constitutes 'plain error', the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983). However, "even when the 'plain error' rule is applied, '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.'" *Id.* at 660-61, 300 S.E.2d at 378 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977))(alteration in original).

The court charged the jury on the State's use of the evidence in question using the language of N.C.P.I.–Crim. 105.21, entitled "False, Contradictory, or Conflicting Statements of Defendant":

> The State contends and the defendant denies that the defendant made false, contradictory, or conflicting statements. If you find that the defendant made such statements, they may be considered by you as a circumstance tending to reflect the mental process of a person possessed of a guilty conscience, seeking to divert suspicion or to exculpate the concern, and you should consider that evidence along with all the other believable evidence in this case. However, if you find that the defendant made such statements, they do not create a presumption of guilt, and such evidence standing alone

is not sufficient to establish guilt.

This instruction explained to the jury that: (1) the State and Defendant disputed whether Defendant made prior inconsistent statements to Investigator Bethea, (2) if the jury believed that Defendant made such statements, that they could consider them as evidence of an effort by Defendant to "divert suspicion," and (3) standing alone, any prior inconsistent statement of Defendant was insufficient to establish guilt.

It is speculative as to whether the jury took this charge to mean it could consider Defendant's prior comments to Investigator Bethea as substantive evidence of guilt. Defendant on appeal does not direct us to the alternate language the trial court should have used. To the extent Defendant argues that the charge given did not properly instruct the jury as to the limited purpose for which the evidence could be considered, we note that a "trial court [does] not err in . . . fail[ing] to restrict the purpose of the cross-examination for impeachment only" when "counsel [does] not request such an instruction." *Gillespie v. Draughn*, 54 N.C. App. 413, 416, 283 S.E.2d 548, 551 (1981).

In general, the choice of jury instructions is a "matter within the trial court's discretion and will not be overturned absent a showing of abuse of discretion." *State v. Nicholson*, 355 N.C. 1, 66, 558 S.E.2d 109, 152 (2002). The instruction the trial court elected to give was within its discretion. We hold the court's decision was not in error, much less plain error.

## C. Insufficient Evidence of "Sexual Act"/Instructing on Theory Unsupported by Evidence

[3] Defendant next asserts that the trial court erred by denying his motion to dismiss the second-degree sexual offense charge because the State presented insufficient evidence of a requisite "sexual act" on the part of Defendant. Defendant's argument is without merit.

We review a trial court's denial of a motion to dismiss *de novo*. *State v. Chillo*, 208 N.C. App. 541, 545, 705 S.E.2d 394, 397 (2010). When a defendant makes a motion to dismiss, the trial court must determine whether there is "substantial evidence" of (1) the essential elements of the offense charged, and (2) the defendant's being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and is a question of law for the trial court. *State v.*

*Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). In evaluating a defendant's motion, the trial court must view the evidence in the light most favorable to the State and give the State "the benefit of all reasonable inferences" to be drawn from the evidence. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992).

Defendant was convicted of second-degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.5(a)(1) (2011), an essential element of which is "engage[ment] in a sexual act with another person." N.C. Gen. Stat. § 14-27.1(4) (2011) defines "sexual act" as including "cunnilingus" or "the penetration . . . by any object into the genital . . . opening of another person's body." Cunnilingus is "the slightest touching by the lips or tongue of another to any part of [a] woman's genitalia." *State v. Ludlum*, 303 N.C. 666, 674, 281 S.E.2d 159, 163 (1981).

Here, Defendant argues that there was insufficient evidence of both cunnilingus and penetration. However, the record reflects sufficient evidence of both acts, particularly when providing the State the "benefit of all reasonable inferences."

Barbara testified as follows:

Q. What happened then?

A. He had grabbed my shorts and tried to pull them down. I had one side of them and he kept trying to pull my shorts down. And he got them down. He put two fingers inside of me. And I grabbed his hand, tried to move but he wouldn't.

Q. Did you have on underpants at that time?

A. Yes, ma'am.

Q. Did he pull those down, too?

A. Yes, ma'am.

Barbara then testified that Defendant said he "wanted to please [her] like a woman should be pleased," "got between [her] legs" and "started licking all over [her] and stuff," and this went on for about five minutes. Barbara also stated that Defendant immediately expressed remorse over what he had done. She also explained that she "was having [vaginal] discharge from [Defendant]." The State introduced, without objection from Defendant, a lengthy and detailed statement Barbara made to police which was consistent with the account of the events she gave at trial. We disagree with Defendant

that the evidence presented, viewed in totality and taken in the light most favorable to the State, warranted dismissal of the charge against him. Defendant's motion to dismiss was properly denied.

Accordingly, Defendant's argument that the trial court erred by "instruct[ing] the jury on a theory of 'sexual act' not supported by the evidence," is also without merit.

## D. Admission of "Other Crimes" Evidence

[4] Defendant additionally argues that the trial court erred in admitting via testimony four pieces of "other crimes" evidence which were inadmissible under N.C. R. Evid. 401–404 and 802. Specifically, Defendant contends admission of the following was improper: (1) Barbara's testimony that a woman named Cathy Smith had told her that Smith had "walked in on [Defendant] molesting another fourteen-year-old girl," (2) testimony from Vann to the same effect, (3) Tanya's repeated testimony that Defendant had threatened to kill her mother and grandmother, and (4) testimony from Defendant the State eliciting on cross-examination that he had "just got out of jail."

Defendant did not object to any of this testimony at trial, and thus bears the burden of demonstrating plain error. *See State v. Lawrence*, ___ N.C. ___, ___, 723 S.E.2d 326, 334 (2012). This Court does not analyze errors cumulatively to determine whether plain error is present. *State v. Bellamy*, 172 N.C. App. 649, 662, 617 S.E.2d 81, 90 (2005).

With regard to Barbara and Vann's testimony about Defendant's alleged molestation of another girl, we note that Defendant elicited this testimony on cross-examination of the State's witnesses, and made no motion to strike this testimony. This Court has recognized that "[s]tatements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law." *See State v. Carter*, ___ N.C. App. ___, ___, 707 S.E.2d 700, 707–08 (2011) (quotation marks and citation omitted). "Thus, a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001). Accordingly, Defendant's argument insofar as it pertains to these statements is overruled.

Moreover, we cannot say that introduction of the remaining two pieces of evidence, that Defendant had threatened to kill Tanya's mother and grandmother, and that he had "just got out of jail," although likely not helpful to Defendant's case, were so prejudicial as

to have " 'tilted the scales' and caused the jury to reach its verdict." *State v. Duke*, 360 N.C. 110, 138-39, 623 S.E.2d 11, 29-30 (2005). Defendant's argument to the contrary is overruled.

## E. Inadmissible Opinion Evidence

**[5]** Defendant lastly argues that the trial court erred in "admitt[ing] the State's inadmissible opinion evidence [that] Defendant had in fact sexually abused [Barbara]." This argument is without merit.

At trial, Investigator Bethea testified for the State that on 20 September 2010 he "thought [he] had enough [evidence] at that point in time" to arrest Defendant for sex crimes and that on that on the same day both Vann and Sheffield told him that "a sexual assault had occurred over a period of time." Vann also testified for the State that another woman named Ann Herring told her after September 2010 that "she knew that [Defendant] had did this because of the questions that [Defendant] had asked her" and that "[D]efendant had done what he was accused of." Defendant argues this testimony was impermissible opinion evidence that should have been excluded.

However, an officer may give testimony regarding his perception and experience conducting a sexual assault investigation. *See, e.g., State v. O'Hanlon*, 153 N.C. App. 546, 562–63, 570 S.E.2d 751, 761–62 (2002). Upon review of the record, it is clear that Investigator Bethea was merely providing a narrative of his investigation. His testimony was not being offered as expert or lay testimony probative on the issue of Defendant's guilt. Vann's hearsay testimony recounting a third party's assertion that "she knew that [Defendant] had did this because of the questions that [Defendant] had asked her" does not, standing alone, amount to plain error. This is especially true in light of the context in which it was elicited—as a response to a question about how the investigation began. Defendant's argument to the contrary is overruled.

## IV. Conclusion

For the foregoing reasons, we find

NO PREJUDICIAL ERROR IN PART; NO ERROR IN PART.

Judges HUNTER, Robert C. and CALABRIA concur.